UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LEO HUHN,

                Plaintiff,

v.                                                  Case No.  5:08-cv-16-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. (Doc. 1.)  The Commissioner has answered (Doc. 5) and both parties have filed briefs outlining their respective positions. (Docs. 11 & 12.)  For the reasons discussed below the Commissioner's decision is due to be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

On September 1, 2004, Plaintiff filed an application for disability insurance benefits claiming a disability onset date of April 24, 2004. (R. 42-44.)  On November 29, 2006, Plaintiff's claim was denied after a hearing before an Administrative Law Judge ("ALJ") (R. 12-23, 258-285.)  On November 20, 2007, the Appeals Council denied Plaintiff's request for review.  (R. 6-8.)  After having exhausted his administrative remedies, Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) and filed his appeal to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1]  Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3]  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

---

[1] *See* 42 U.S.C. § 405(g).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401(1971); <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] <u>Foote</u>, 67 F.3d at 1560; *accord* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

[5] <u>Keeton v. Dep't Health & Human Servs.</u>, 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, she is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *See* Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

[12] Id. § 404.1520(e).

past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987) ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was born on June 26, 1945 and was sixty-one (61) years old at the time of the final decision. (R. 12-23, 42, 258-285.)  Plaintiff received a general equivalency diploma before entering the Air Force in 1962.  (R. 264.)  Plaintiff has past relevant work experience as a truck, bus, and taxicab driver and car salesman. (R. 50, 60, 277.)  Plaintiff contends that he has been unable to work since April 24, 2004, due to a left thumb fracture, left foot fracture, chronic pain and degenerative disc disease of the cervical spine. (R. 49.)

On April 24, 2004, Plaintiff was treated at Ocala Regional Medical Center for injuries he sustained in an motor vehicle crash. (R. 94-107.)  Plaintiff was seen in the

---

[18] <u>Walker</u>, 826 F.2d at 1003.

[19] <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[20] *See* <u>id</u>.

[21] *See* <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

emergency room and treated for a contusion of the right chest wall, laceration of the left thumb and a sprain of the left ankle and foot. (R. 95.) Plaintiff also experienced an extensor tendon injury to the left thumb. (R. 95.)  X-rays revealed severe degenerative disc disease of the cervical spine at C3-4 and C5-6. (R. 101.)  A cat scan of the thumb revealed a fracture of the left thumb and a cat scan of the foot showed a comminuted displaced fracture of the cuboid.  (R. 97-98.)

Plaintiff participated in physical therapy from July 27, 2004 to August 26, 2004. (R. 110-130.)  The records show that Plaintiff was discharged on August 26, 2004 to continue an independent fitness program and that his prognosis was good.  (R. 114.)

On May 4, 2004, Plaintiff was treated for the injuries to his left foot and thumb by Dr. Charles Shaw. (R. 136-137.)  On April 30, 2004, a CT of the left thumb revealed a dorsal intraarticular avulsion fracture from the proximal articular surface of the distal phalanx.  (R. 140.)  Dr. Shaw diagnosed an avulsion of the insertion of the exterior tendon, with mallet deformity.  (R. 137.)  On May 7, 2004, Dr. Charles Shaw conducted an open reduction and internal fixation Mallat finger of the right thumb at West Marion Community Hospital. (R. 108-109.)  Dr. Shaw also treated Plaintiff's left ankle injury which was diagnosed as a possible fracture through the medial aspect of the navicular. (R. 138.)  Dr. Shaw reported that a CT scan of the left foot demonstrated a crush injury of the cuboid; however, the bone appeared to be in good position and Dr. Shaw recommended that this be treated non-operatively. (R. 136.)  On June 1, 2004, Dr. Shaw reported minimal tenderness over the cuboid. (R. 134.)  On June 22, 2004, a CT revealed a healing fracture of the distal phalanx, first digit, and the fracture appeared to be in relative anatomic alignment; however, complete bony union was unlikely.  (R.

6

139.)  On July 27, 2004, Plaintiff returned for treatment with Dr. Shaw and reported that

he had stiffness about his thumb and that he was unable to fully flex his fingers.  (R.

132.)  Dr. Shaw noted that Plaintiff's wound was fully healed and he subsequently

referred Plaintiff to physical or occupational therapy for further mobilization.

On September 3, 2004, Plaintiff returned to Dr. Shaw and reported complaints of

stiffness of his thumb and an inability to flex his fingers. (R. 131.)  Dr. Shaw noted that

Plaintiff's wound was fully healed. However, Plaintiff had stiffness of the interphalingeal

joint of the thumb which was nicely aligned.  Due to the laceration on the thumb, Plaintiff

had edema on the skin which was going to be a chronic problem because of poor

venous outflow.  Dr. Shaw noted that Plaintiff's wounds were healed and he continued

to do well.  Additionally, Dr. Shaw noted Plaintiff's complaints of swelling and continued

discomfort of his mid-foot. Otherwise, Plaintiff was noted as doing well with the foot.  Dr.

Shaw reported that Plaintiff had completed his course of physical therapy and was

going to be allowed to increase his activity level as tolerated.

Dr. Charles Grudem, a pain specialist, treated Plaintiff from May 17, 2004

through December 28, 2004.  (R. 150-161.)  On May 17, 2004, Plaintiff complained of

pain in the neck, upper and lower back, bilateral hips, and rib and chest pain.  (R. 158.)

Plaintiff was treated with pain and anti-inflammatory medications.

In June, Plaintiff returned to Dr. Grudem with complaints of neck and back pain.

(R. 155.)  On examination, Plaintiff was alert and oriented.  Plaintiff's motor examination

showed hip flexion and knee and ankle extension to be strong and equal.  Dr. Grudem

reported great and small toe extension tenderness on the left foot.  Dr. Grudem noted

that straight leg raises were negative bilaterally. However, bilateral superior gluteal

nerve entrapment was noted with tightness of the lower paraspinal muscles and along the gluteals. Plaintiff was directed to continue with pain and anti-inflammatory medications. (R. 156.) A June 24, 2004 CT of Plaintiff's chest revealed no acute abnormalities. (R. 161.)

In September of 2004, Plaintiff returned to Dr. Grudem with complaints of pain. (R. 154.) On examination, Plaintiff was alert, oriented and well nourished. Dr. Grudem noted light tough allodynia and deformity of the left thumb. Dr. Grudem reported that Plaintiff could not make a fist with the left hand and atrophy was noted.

On December 28, 2004, Plaintiff returned for treatment with Dr. Grudem. (R. 150.) Plaintiff complained of thoracic, left hand and foot pain. On examination. Dr. Grudem noted that Plaintiff was alert, oriented and well nourished. Dr. Grudem stated that Plaintiff had tenderness of the cervical and thoracic spine. An MRI scan of the cervical spine revealed mild broad-based disc protrusion at C3-4, C4-5, C5-6, and C6-7. A Schmorl's node was present along the superior aspect of the T10 vertebral body.

On December 11, 2004, Plaintiff underwent a consultative psychological examination by Gary Honickman, Ph.D. at the request of his attorney. (R. 190-192.) Plaintiff drove himself to this appointment. (R. 191.) During that evaluation, Dr. Honickman noted that Plaintiff's mood and affect were mild to moderately depressed. (R. 191.) Dr. Honickman reported that Plaintiff was oriented in all spheres, his thought processes were organized, his insight and judgment were fair and he demonstrated an ability to recall six digits forward and backward. Plaintiff denied hallucinations or suicidal ideation. Dr. Honickman administered an intellectual functioning test, which suggested average intellectual functioning; a Beck depression inventory which

suggested a moderate to severe range of depression and the MMPI-2 profile, which suggested "significant psychic distress." (R. 192.)  Dr. Honickman opined that Plaintiff suffered from a pain disorder associated with a general medical condition and psychological factors.  Dr. Honickman further stated that "in terms of his injuries he is deemed unlikely to be able to return to his former occupation of bus driving, and is also deemed to be unlikely at his age to be able to be retrained."  (R. 192.)

A Psychiatric Review Technique Form was prepared on February 7, 2005 by Steven Wise, Psy. D.  (R. 162-175.)  Dr. Wise concluded that Plaintiff had a pain disorder with psychological and medical factors but that Plaintiff did not satisfy the diagnostic criteria of a Somatoform disorder. (R. 168.)  Dr. Wise determined that the pain disorder was not a severe impairment and stated that there was no prior or longitudinal basis to support such a diagnosis. (R. 162, 174.) Dr. Wise concluded that Plaintiff had mild limitations in activities of daily living, mild limitations in maintaining social functioning, concentration, persistence or pace and no episodes of decompensation of extended duration.  (R. 172.)

On April 5, 2005, Plaintiff underwent a consultative physical examination by Dr. Edward Demmi.  (R. 176-181.)  Dr. Demmi observed that Plaintiff's left thumb appeared somewhat smaller than the right but there was no swelling to the fingers or the thumb and there was decreased range of motion with the left thumb. (R. 178-79.)  Dr. Demmi reported that Plaintiff's grip strength on the left was 3/5 and on the right was 5/5.  (R. 179.)  Fine manipulation of the left hand was decreased; however, the right hand was normal and sensory of the fingertips also was normal. Although Plaintiff noted pain upon range of motion of the left shoulder, no impingement was noted and motor strength was

5/5. (R. 178.)  Dr. Demmi noted that Plaintiff had discomfort on deep palpitation in the region of T3-4 with no radicular component. (R. 179.)  Dr. Demmi reported that Plaintiff's motor strength in his hips, knees, ankle and toes were normal; however Plaintiff could not evert the left ankle.  Altlhough Dr. Demmi observed Plaintiff's gait and noted "obvious antalgia" Plaintiff walked unassisted. (R. 179.)   Plaintiff was unable to complete heel to toe walking due to pain and unsteadiness of the foot.

Dr. Demmi reported that Plaintiff was alert and oriented times three. (R. 179.)  Plaintiff's affect, mood tone and intellectual functioning appeared normal.  Dr. Demmi diagnosed Plaintiff with status post left thumb amputation with re-attachment; status post multiple left foot fractures; recurrent musculoskeletal and back pain; chest pain which was non-cardiac in origin and orthopnea.  (R. 180.)  Dr. Demmi noted that Plaintiff does not have chest pain with respiration and although he complained of discomfort in the breast bone area there was no redness, heat, swelling, pain, tenderness or other signs of inflammation.

On April 21, 2005, a second non-examining state agency physician, reviewed the medical record and conducted an RFC assessment.  (R. 182-189.)  The non-examining physician found that Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; he could sit or stand/walk up to six hours in an eight hour day; limited pushing and pulling in the upper extremities; and limited gross and fine manipulation.  (R. 183, 185.)  The non-examining physician noted that Plaintiff's thumb had healed with some thumb and finger stiffness; that the MRI of the cervical spine showed degenerative disc disease; Plaintiff's neck had forward range of motion; there

was chest wall tenderness;  his left grip was 3/5; and he had an antalgic unassisted gait. (R. 183.)

Plaintiff returned for treatment with Dr. Grudem from February 22, 2005 through March 1, 2006. (R. 208-240.)  On February 22, 2005, Plaintiff complained of thoracic, low back, left shoulder, left hand, fingers and chest pain.  (R. 236.) Plaintiff reported that he was unable to wear a shoe on his left foot.  During the examination, Dr. Grudem noted that Plaintiff was alert, oriented and a slight warmth was noted on the left lateral foot, although no swelling was present. (R. 231, 236.)

On April 20, 2005, Plaintiff returned for treatment with Dr. Grudem.  (R. 220.) Plaintiff had pain between his shoulders, chest, and left foot and gastrointestinal upset. Dr. Grudem noted that Plaintiff was alert and oriented.  Plaintiff received his medication through the Veterans Administration.

On July 13, 2005 and October 12, 2005, Plaintiff returned for treatment with Dr. Grudem.  (R. 216-18.)   Plaintiff continued to complain of chest pain with deep breathing, left shoulder pain with range of motion, left hand and shoulder blade pain, a burning sensation with the left foot and gastrointestinal upset.  Plaintiff was alert and oriented. Dr. Grudem encouraged Plaintiff to have an MRI conducted on his foot.

Plaintiff was treated by Dr. Grudem in November of 2005.  (R. 214-215.) Plaintiff's complaints of pain remained the same and he  wore a splint on the thumb and was unable to wear closed toe shoes.  Plaintiff complained of worsening depression over his decreased functional status.  (R. 214.)  Plaintiff was subsequently diagnosed with adjustment reaction with depression.

11

On January 4, 2006, Dr. Grudem noted diffuse tightening of the thoracic area and that Plaintiff was alert, oriented and well nourished. (R. 212.) Plaintiff reported that his left foot pain was intermittent but was sharp at times with range of motion. Dr. Grudem noted an adjustment reaction with depression diagnosis. (R. 210.)

On March 1, 2006, Plaintiff still complained of pain in his left foot and tenderness in the breast plate; otherwise there were no other complaints. (R. 208.) The records reveal that Plaintiff's medications were helpful and upon examination he was alert, oriented and well nourished. At this appointment Dr. Grudem noted that he discussed with Plaintiff the "long-term expectations and physical restrictions, e.g. no repetitive leg motions, no climbing and no ladders." (R. 209.)

A Residual Functional Capacity Assessment Form was completed by Dr. Charles Grudem on September 27, 2006. (R. 241-245.) Dr. Grudem opined that Plaintiff was able to frequently lift and carry up to five pounds with limited carrying for short distances only; to lift and carry up to 10 pounds occasionally and lift a maximum of 25 pounds; he should avoid unprotected heights and climbing; he was mildly limited to being around moving machinery and exposure to marked changes in temperature or humidity; he could sit a maximum of three hours in an eight hour workday; he could stand two hours and walk for five minutes in an eight hour workday; he could perform simple grasping and fine manipulation with the right hand but not with his left hand; he would need to change positions frequently; he had marked interference with fine dexterous movements with his right and left upper extremities; and had a mild to moderate degree of interference with gross dexterous movements with his right and left upper extremities respectively.

Dr. Grudem also expressed an opinion regarding Plaintiff's psychological condition. (R. 244-245.) On the Residual Functional Capacity Assessment Form, Dr. Grudem had "noticed" the following depressive signs or symptoms: anhedonia, appetite and sleep disturbance, psychomotor agitation, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (R. 244.) Dr. Grudem opined that Plaintiff had marked limitations with understanding and remembering short simple instructions; moderate limitation in the ability to carry out short simple instructions; marked limitation in the ability to make judgments based upon simple work related decisions; marked limitation in the ability to remember locations or work-like procedures; moderate limitation in the ability to perform activities within a schedule, maintain regular attendance and be punctual; marked limitation to make simple work related decisions; moderate limitation in the ability to complete a workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; marked limitation with interaction with the general public and with co-workers; marked limitation to set realistic goals or to make plans independently of others and that Plaintiff had extreme limitations with the ability to respond appropriately to criticism from supervisors. (R. 244.)

Plaintiff testified on his own behalf at the administrative hearing held on October 3, 2006. (R. 260-274.) Plaintiff stated he was 61 years of age at the time of the hearing. (R. 262.) Plaintiff testified that he had limited grip strength in his hand and he was unable to wear a shoe on his left foot. Plaintiff stated that he has pain in his foot at all times. (R. 262-63.) Plaintiff buys milk, juice and tea in half gallon containers because he has difficulty lifting them. (R. 263.) Plaintiff testified that he is right-handed.

13

Plaintiff stated that he has difficulty concentrating and experienced depression and feelings of worthlessness. According to Plaintiff, he has pain all of the time and takes Percocet, Ibuprofen and Celebrex for the pain. Plaintiff acknowledged that he also takes depression medication. (R. 264.) He stated that he was able to walk across the street or up to five minutes. (R. 264.) He is unable to get a "good nights sleep" due to pain. (R. 265.) Plaintiff is unable to cook meals but can make himself a bowl of cereal, bathe himself for the most part and must wear pullover shirts because he is unable to button shirts. (R. 266.)

Plaintiff's daily activities include watching television, reading, or playing games on the computer. (R. 266.) Plaintiff stated that since the accident he no longer has a social life. During the hearing, Plaintiff experienced a spasm in his hand which according to him, happens frequently. (R. 267.) Plaintiff testified that he takes naps during the day due to his medication and due to sheer boredom. Plaintiff stated that he experienced pain in his shoulder blade, left foot, left hand, shoulder and that he had difficulty concentrating. (R. 268.) Plaintiff stated that he could stand 10 to 15 minutes at a time and can sit for approximately 30 minutes at a time. (R. 271.) Plaintiff testified that after 30 minutes he begins to get "antsy" and must move around. Plaintiff stated that he can lift a maximum weight of a gallon of milk. (R. 272.) Plaintiff stated that he is not under the care of a psychologist or psychiatrist because he is unable to afford it.

Although the ALJ declined to find that Somatoform disorder was a severe impairment, the ALJ did determine that Plaintiff suffered from the severe impairments of post left thumb fracture, status post left foot fracture, chronic pain in the left thumb and foot and degenerative disc disease of the cervical spine. (R. 17, 19.) Even though the

14

ALJ fond find that the Somatoform disorder constituted a non-severe impairment, the ALJ evaluated the record regarding a possible mental impairment. The ALJ determined that Plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. While the ALJ determined that Plaintiff had severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (R. 19.)

The ALJ then went on to find that Plaintiff had the residual functional capacity ("RFC") to occasionally lift and carry up to twenty pounds and 10 pounds frequently; to stand or walk for approximately two hours in an eight-hour workday and sit for about six hours in an eight hour workday; he should avoid pushing and pulling with his left upper and lower extremities; he can occasionally climb ladders and stairs; can kneel, crawl and crouch.  Further, as part of the Rfc the ALJ concluded that Plaintiff cannot repetitively handle or grossly manipulate with his left hand and he should avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. Based upon these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work.

The ALJ then determined that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, he did not find Plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms entirely credible.  (R. 24.)

Because the burden had shifted to the Commissioner, the ALJ obtained the testimony of Richard Hickey, a vocational expert ("VE") to determine whether Plaintiff could perform other work in the national economy.

The VE testified that Plaintiff's past work experience as a tractor trailer driver was medium, semi-skilled work, which involved work skills in driving long distances to deliver products, maintaining driver logs and applying knowledge of commercial driving regulations. (R. 277.)  In reliance upon this testimony from the VE the ALJ found that Plaintiff had acquired work skills from his past relevant work.

The VE then testified in response to several hypothetical questions posed during the administrative hearing. (R. 274-285.) The first hypothetical question asked the VE to assume a worker: (1) of advanced age; (2) with the education and past relevant work of the Plaintiff; (3) with the ability to occasionally lift and or carry 20 pounds using both hands, and 10 pounds frequently; (4) with the ability to stand and/or walk for two hours in an eight hour day; (5) with the ability to sit about six hours in an eight hour workday; (6) with limitations to pushing and pulling with both upper and lower extremities, especially with the left hand and left leg; (7) who can occasionally climb ramps, stairs, ladders, ropes or scaffolds; (8) who can occasionally kneel, crouch and crawl; (9) with limitations with gross manipulations and handling in the left hand; (10) who should avoid concentrated exposure to hazards, such as, dangerous machinery and unprotected heights; and (11) with mild restrictions of activities of daily living, mild difficulties maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace.  (R. 278.)  Although the VE concluded that Plaintiff could not perform his past relevant work, the VE testified that Plaintiff could perform other

sedentary work which existed in significant numbers in the national including dispatcher of public works departments, DOT 239.367-030 and information clerk, DOT 237.367-022. (R. 278-280.)  The VE went on to testify that Plaintiff could also perform the job of lot attendant, DOT 915.583-010, a light work position. (R. 279.)  The VE also testified that Plaintiff had transferable skills, such as the ability to maintain logs and compile data, which skills would be transferable to these communication type of jobs. (R. 277.)

As a result of Plaintiff's advanced age of 61, the ALJ questioned the VE regarding the degree of vocational adjustment that would have to be made, in terms of tools, work processes, and work settings for the industry, from his past relevant work to the job of dispatcher, lot attendant, and information clerk.  (R. 280-281.)  The VE testified that the work setting of a dispatcher or an information clerk would be different in that Plaintiff would be in an office as opposed to being in a tractor trailer out on the roadway.  (R. 281.)  However, according to the VE, this "would not be a major change" because as a tractor trailer driver he would have had experience checking with the main office and there are positions available for dispatchers for commercial freight delivery companies. (R. 280.) The VE opined that the job tools and work processes of message taking and keeping logs as a dispatcher would not be a "significant change" from keeping a log as a tractor trailer driver. The VE concluded that the job tools and processes of information clerk would not differ that much from Plaintiff's past relevant work in that both jobs require the individual to keep logs or checklists. (R. 281.)

The ALJ then modified the hypothetical to include: (1) a worker of advanced age; (2) the education and past relevant work of the Plaintiff; (3) an individual who could only lift up to five pounds frequently, and 10 pounds occasionally, 11 to 25 pounds seldom;

17

(4) he cannot climb at anytime; (5) should avoid unprotected heights, moving machinery and exposure to marked changes in temperature or humidity; (6) the ability to sit a maximum of three hours in an eight hour workday; (7) the ability to stand two hours and walk for five minutes; (8) with the right hand he can participate in repetitive actions, such as, simple grasping and fine manipulation; (9) with the left hand he is restricted from repetitive actions, simple grasping and fine manipulation; (10) must change positions frequently from sitting to standing; (11) limitations in the use of fingers, hand and thumbs; (12) marked interference with fine dexterous movements, such as, using hand tools, putting small objects together, picking up change with the fingers, typing or threading a needle; (13) marked limitations with understanding and remembering short simple instructions; (14) moderate limitation in the ability to carry out short simple instructions; (15) marked limitation in the ability to make judgments based upon simple work related decisions; marked limitation in the ability to remember locations or work-like procedures. (R. 282-283.) Based upon this hypothetical, the VE concluded that there were no jobs in the national economy that Plaintiff would be able to perform with those limitations. (R. 283.)

The ALJ concluded that Plaintiff could perform the exertional requirements of work falling between light and sedentary and that his limitations do not significantly compromise the number of jobs he could perform. Accordingly, the ALJ concluded that

Plaintiff was not disabled at any time from April 24, 2004 though the date of the ALJ's decision.[22]  (R. 23.)

## IV.  DISCUSSION

Plaintiff raises five claims of error. First, Plaintiff argues that the ALJ erred by finding that Plaintiff's pain disorder is not a severe impairment.  Second, the Plaintiff contends that the ALJ erred by rejecting the opinions of Plaintiff's treating and examining physicians and by ignoring limitations identified by the consultative physician. Third, Plaintiff contends that the ALJ erred by improperly discounting Plaintiff's subjective complaint testimony.  Fourth, the Plaintiff argues that the ALJ ignored the mandatory requirements of SSR 96-8p when determining Plaintiff's RFC.  Lastly, Plaintiff argues that the ALJ erred by finding that Plaintiff had transferable skills for the two jobs identified by the VE.

### A.    The ALJ Did Not Err By Finding That The Somatoform Disorder Was Non-Severe

Plaintiff's first argument is that the ALJ erred by finding that Plaintiff's Somatoform disorder was not a severe impairment.

At the second step of the sequential disability determination, the ALJ must "consider the medical severity of [the claimant's] impairments."[23]  In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit"

---

[22]  To be eligible for disability insurance benefits under Title II of the Social Security Act, Plaintiff must establish that her disability began before his insured status expired.  42 U.S.C. § 423(a) and (c), 20 C.F.R. § 404.101, § 404.130, § 404.131; Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).  The record demonstrates that Plaintiff's insured status expires on September 30, 2007.  (R. 47). Consequently, Plaintiff must establish disability prior to that date.

[23] See Wind v. Barnhart, 133 Fed.Appx. 684, 690 (11th Cir. 2005)(quoting Phillips v. Barnhart, 357 F.3d. 1232, 1237 (11th Cir. 2004).

the claimant's "physical or mental ability to do basic work skills."[24]  This is a threshold

inquiry and only claims based on the most trivial impairments are rejected.[25]  "An

impairment is not severe only if the abnormality is so slight and its effect so minimal that

it would clearly not be expected to interfere with the individual's ability to work,

irrespective of age, education or work experience."[26] A diagnosis is, however,

insufficient.  Instead, Plaintiff must show the effect of the impairment on his ability to

work.[27]  In other words, the severity of a medically ascertained impairment must be

measured in terms of its effect upon ability to work, and not simply in terms of deviation

from purely medical standards of bodily perfection or normality.[28]

In order to establish that a mental impairment is severe a claimant must show

that the mental impairment significantly limits a claimant's abilities to do basic work

activities.  Basic work activities include: (1) physical functions such as walking, standing,

sitting, lifting, pushing; (2) capacities for seeing, hearing, and speaking; (3)

understanding, carrying out, and remembering simple instructions; (4) using judgment;

(5) responding appropriately to supervision, co-workers and usual work situations; and

(6) dealing with changes in a routine work setting.[29]  In addition, in order to be

---

[24] See id.

[25] See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

[26] Id.

[27] See Wind, 133 Fed.Appx. at 690 (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[28]  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[29] 20 C.F.R. §§ 404.1521(b), 416.921(b).

considered a severe impairment, the impairment must last for a continual period of at least twelve months.[30]

Plaintiff has failed to satisfy this standard. The evidence of record concerning Plaintiff's Somatoform disorder was thoroughly discussed by the ALJ in his decision and the ALJ provided reasons why the disorder was not included as a severe impairment. The evidence did not establish that Plaintiff's Somatoform disorder imposed any significant limitations on his mental ability to do work-related activities.

The claimant points to a one-time diagnostic impression of Somatoform disorder given by Gary Honickman, Ph.D., a consultative psychologist, on December 11, 2004, in support of his argument that his Somatoform disorder was a severe impairment. The ALJ discussed and considered this evidence but concluded that the Somatoform disorder did not significantly limit Plaintiff's mental ability to perform work related activities. As part of his consideration of Plaintiff's Somatoform disorder, the ALJ relied in part upon the opinion of the state agency psychiatrist and concluded that Plaintiff experienced only mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence or pace.

While the report of the psychological evaluation of Plaintiff by Dr. Gary Honickman, a one-time consultative examiner, contains a diagnosis of Somataform disorder, the report does not contain evidence that Plaintiff has any severe work-related

---

[30] 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(c), 416.905(a), 416.909, 416.920(c); *see also*, Barnhart v. Walton, 535 U.S. 212 (2002)(noting that a claimant's impairment(s) must last for at least twelve months).

limitations as a result of the Somatoform disorder. Dr. Honickman's report describes an individual who was capable of driving himself to the appointment and who was friendly, polite and oriented in all three spheres. (R. 191.)  Further, consistent with the ALJ's conclusion that Plaintiff's Somatoform disorder did not cause any worked related limitations, Dr. Honickman found that Plaintiff could recall six digits forward and backward.  (R. 191.)  Although Plaintiff's thought content reflected his depression, his thought processes were found to be organized.  Finally, Dr. Honickman noted that Plaintiff's insight and judgment were fair.

While the report offered a diagnosis of a pain disorder associated with a general medical condition and psychological factors, and Dr. Honickman makes a broad statement that "in terms of his [physical] injuries he is deemed to be unlikely to be able to return to his former occupation of bus driving, and is also deemed to be unlikely at his age to be able to be retrained" (R. 192), the report did not offer any evidence that Plaintiff's mental ability to engage in basic work activities was limited in any appreciable way. The diagnosis of Somatoform disorder by Dr. Honickman is the only diagnosis of any mental condition and the record is devoid of any other records which evidence that Plaintiff's pain has a limiting effect on his ability to engage in basic work activities.

Additionally - like the report from Dr. Honickman - the report from Dr. Demmi does not contain any evidence of mental functional limitations connected to a Somatoform disorder. (R. 179.) Dr. Demmi - who is not a psychiatrist or mental health professional - performed a medical consultative examination of Plaintiff on April 5, 2005. (R. 176.)  Dr. Demmi found that Plaintiff was alert and oriented and his mood, affect and

intellectual functioning appeared normal. (R. 179.) Dr. Demmi did not report any mental functional limitations.

In addition to the fact that the ALJ thoroughly analyzed and discussed the evidence relating to Plaintiff's pain disorder, the ALJ expressly relied upon and referenced the assessments of the state agency psychiatrist who also reported that Plaintiff's Somatoform disorder was not severe. The state agency psychiatrist filled out a Psychiatric Review Technique Form, which contained an evaluation of how the Plaintiff's Somatoform disorder impacts Plaintiff's activities of daily living, social functioning, concentration, persistence, or pace and whether there were any episodes of decompensation. (R. 162-175.)

Steven Wise, Psy. D., the state agency clinical psychiatrist, concluded that Plaintiff had a pain disorder with psychological and medical factors but that he did not satisfy the diagnostic criteria of a Somatoform disorder. (R. 168.) Dr. Wise determined that the pain disorder was not a severe impairment and stated that there was no prior or longitudinal basis to support Somatoform disorder. (R. 162, 174.) Dr. Wise concluded that Plaintiff had mild limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. (R. 172.) There were no episodes of decompensation noted. (R. 172.)

In short, there was a dearth of evidence of any functional limitations with regard to Plaintiff's ability to engage in basic work skills related to the diagnosis of Somataform

disorder.  Generally, if the degree of limitation in the first three functional areas are "mild" and there is "none" in the fourth area, an impairment is considered not severe.[31] Accordingly, for these reasons, the Court concludes that the ALJ did not err in finding that Plaintiff's Somatoform disorder was not a severe impairment at step two of the sequential evaluation and that the substantial evidence of record supports the ALJ's decision.

### B.      The ALJ Gave Proper Weight to the Medical Opinions

Plaintiff contends that the ALJ erred by rejecting the opinions of Dr. Grudem, a treating physician and the opinion of Dr. Honickman, a consultative examining physician, and by ignoring limitations identified by the consultative examining physician, Dr. Demmi.

Turning first to the opinion of Dr. Honickman, Plaintiff contends that the ALJ improperly rejected Dr. Honickman's opinion because the ALJ noted that Plaintiff was examined by Dr. Honickman as a result of an attorney referral and not as a result of a referral by a treating physician.  Relying upon *Miles v. Chater*,[32] Plaintiff contends that it is improper to reject medical evidence because it was obtained as a result of an attorney referral. In *Miles*, the Eleventh Circuit found that an ALJ's statement that examinations from a particular physician, who had examined the claimant based upon an attorney referral,  "almost invariably conclude that the person being examined [was]

---

[31]  20 C.F.R. § 404.1520a(d)(1).

[32] 84 F.3d 1397, 1399-41 (11th. Cir. 2006).

24

totally disabled" evidenced bias, which required remand for reconsideration before a different ALJ.[33]

That is not the situation in this case. The ALJ simply noted that Plaintiff was evaluated upon his attorney's request and that Plaintiff was not referred for a psychological evaluation by one of his treating physicians.  This statement merely highlighted the obvious point that the claimant had not sought medical treatment from Dr. Honickman because one of his treating doctors had made a referral for treatment but rather the services of Dr. Honickman were sought to obtain evidence in support of his disability application. There is nothing sinister about a consultative examination by a physician based upon an attorney referral. The opinion of a consultative examiner constitutes appropriate medical evidence that the ALJ should consider. However, as with any consultative examination, the opinion of a one time consultative examiner is not accorded the same weight as the opinion of a treating physician, who has a longitudinal history with the claimant. As such, there was nothing improper about the ALJ noting that Dr. Honickman was a one time examiner, based upon an attorney referral.

The Plaintiff also takes issue with the fact that the ALJ relied upon the fact that Dr. Honickman was a psychologist, and not a medical doctor, as grounds for giving little weight to Dr. Honickman's opinion relating to Plaintiff's physical capacities. There was no error by the ALJ in giving little weight to the Dr. Honcikman's opinion concerning Plaintiff's physical capacities because the law provides that an ALJ may give more weight the opinion of a specialist about medical issues related to his area of specialty

_____

[33] 84 F.3d at 1401.

than the opinion of someone who is not a specialist.[34]  Dr. Honickman is not a specialist

with regard to medical issues and is not even a medical doctor. Thus, the ALJ was more

than justified in according little weight to the opinion of Dr. Honickman unrelated to

psychological issues.

Plaintiff also challenges the ALJ decision to discount Dr. Honickman's statement

that Plaintiff could not be retrained.  The ALJ did err in doing so for several reasons.

Whether a claimant can be retrained is an issue reserved to the Commissioner and is

not an opinion of a medical condition. As such, the ALJ is not required to follow the

statement and regardless of the source of the statement, such statements are never

entitled to special significance.[35]

Moreover, the ALJ did not substitute his opinion for the opinion of Dr. Honickman

but rather relied upon other evidence in disagreeing with Dr. Honickman's statement

that Plaintiff could not be retrained. Specifically, the ALJ pointed to psychological testing

which revealed that Plaintiff was of average intelligence (R. 192) and that Plaintiff

demonstrated an ability to recall six digits forward and backwards. (R. 191.) Indeed, the

ALJ noted that Dr. Honickman had found that Plaintiff had adequate concentration and

memory, both of which would support the ALJ's conclusion that Plaintiff could be

retrained.  Furthermore, as noted by the ALJ, the record shows that Plaintiff was

consistently alert and oriented, another relevant fact as to whether Plaintiff could be

retrained.  (R. 150, 179, 191, 212, 214, 220, 231, 236.)  Accordingly, for these reasons,

---

[34]  20 C.F.R. § 404.1527(d)(5).

[35]  *See,* 20 C.F.R. §§ 404.1527(e)(1) & (2); 404.1527(e)(3).

the Court concludes that there was no error by the ALJ in discounting Dr. Honickman's opinion with regard to whether Plaintiff could be retrained.

Plaintiff also takes issue with the fact that the RFC determination does not include limitations with regard to Plaintiff's fine manipulation abilities, which were noted by Dr. Demmi, a one time consultative examiner, as well as by Dr. Grudem. The ALJ did not include any limitations with fine manipulation in the RFC or in the hypothetical question posed to the VE. Because there was medical evidence of some limitation with regard to fine manipulation skills in Plaintiff's left hand, the ALJ either should have included this limitation in the RFC or provided reasons for not including the limitation. This shortcoming does not require reversal, however, because the job of information clerk , identified by the VE as a job available in significant numbers that Plaintiff could perform,  does not require any fingering or feeling and only requires occasional handling.[36]  Consequently, even if the ALJ had included a limitation with regard to fine manipulation in the RFC and in turn in the hypothetical posed to the VE, it would not have made any difference because a fine manipulation limitation would not preclude Plaintiff from performing at least one of the jobs identified by the VE. Accordingly, even if the Court accepted Plaintiff's argument that he had a limitation with fine manipulation, any error by the ALJ in not including the limitation does not change the result and therefore does not require reversal of the decision of the ALJ.

Plaintiff also contends that the ALJ erred by improperly rejecting the opinion of Plaintiff's treating physician, Dr. Grudem. Dr. Grudem completed a Physical Capacity

---

[36] *See,* <u>U.S. Dep't of Labor Dictionary of Occupational Titles</u> (DOT)(4th Ed. 1991), Information and Reception Clerks, No. 237.367-022, found at 1991 WL 672188.

Evaluation Form where he opined that Plaintiff could lift up to 25 pounds, sit for three hours in an eight hour work-day, stand two hours out of eight, walk five minutes in an eight-hour day and have limited use of his left hand and limited use of his right and left upper extremities. (R. 241-245.) Dr. Grudem also opined that Plaintiff would have either "marked" or "extreme" limitations in a number of areas relating to mental functioning. (R. 244.) The ALJ explained that he accorded little weight to Dr. Grudem's opinions because his opinions were not supported by objective medical evidence. There were several reasons for the ALJ's decision to give little weight to Dr. Grudem's opinions, which are fully supported by the record evidence.

With regard to the severe functional limitations assessed by Dr. Grudem, his opinion was largely inconsistent with his own treatment notes. The ALJ correctly noted that Plaintiff's treatment records from Dr. Grudem for the period of time from January 2005 through September 2006 do not contain any mention of any actual physical examinations of Plaintiff, nor any objective findings, but rather only recite Plaintiff's subjective complaints. (R. 208, 210, 214, 216, 218, 220, 231, 236.) Further, Dr. Grudem noted actual physical findings on only two occasions during this time period, one time noting slight warmth and swelling on the left foot (R. 236) and another time noting diffuse tightening of the thoracic. (R. 212.) Additionally, while Dr. Grudem noted on March 1, 2006 that he disagreed with the radiological findings he never identified the findings or discussed the nature of his disagreement. (R. 209.) Accordingly, because Dr. Grudem's severe opinion of functional limitations is not supported by his own treatment notes - which for the most part consist of Plaintiff's self-reported subjective complaints,

and not objective medical testing and findings - there was good cause to discount his opinion.[37]

Plaintiff suggests that Dr. Grudem's opinion is "largely supported by the opinions of other physicians." A review of the record reveals that is simply not the case. No other physician found such severe limitations in Plaintiff's ability to sit, stand or walk through an eight-hour work day. Moreover, as discussed above, the severe limitations which Dr. Grudem noted in the Physical Capacity Evaluation Form are inconsistent with his own treatment records, which disclose that Dr. Grudem told Plaintiff that Plaintiff would be restricted to "no repetitive leg motions, no climbing and no ladders." (R. 209.)

There was also good cause for the ALJ's decision to accord little weight to Dr. Grudem's opinion concerning Plaintiff's mental status. Dr. Grudem found that Plaintiff had marked or extreme limitations with respect to understanding and remembering short, simple instructions, interacting with the public and co-workers and the ability to accept instructions from supervisors; marked limitation in the ability to make judgments based upon simple work related decisions; and marked limitation in the ability to remember locations or work-like procedures. (R. 244.) As a starting point the ALJ correctly discounted Dr. Grudem's mental status opinion because Dr. Grudem was not a specialist in psychology and psychiatry. Generally, more weight is given to the opinion

_____

[37] Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004)(Good cause exists for rejecting the opinion of a treating physician where the "[t]he treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.").

of a specialist about medical issues related to his area of specialty than an opinion of someone who is not a specialist.[38]

Moreover, there is no evidence of record supporting Dr. Grudem's opinion that Plaintiff had "marked" or "extreme" mental limitations. Indeed, throughout the entirety of Plaintiff's treatment notes with Dr. Grudem— with the exception of the form that Dr. Grudem filled out— there are only two entries that even mention a mental impairment. One of the notes simply documents that Plaintiff "complained of worsening depression over [his] decreased functional status" and the second note confirms that Dr. Grudem subsequently diagnosed Plaintiff with "adjustment reaction with depression." (R. 210, 214.) A review of all of the other treatment records from Dr. Grudem, however, discloses that there were no examinations or any other medical evidence which supports the finding that Plaintiff had mental limitations effecting his ability to work. (R. 172, 179, 190-192.) The Court, therefore, concludes that the ALJ articulated adequate reasons for discounting the opinions of Dr. Grudem which are supported by substantial evidence of record.

### C. The ALJ Did Not Err In Discounting Plaintiff's Subjective Complaints of Pain

Plaintiff next alleges that the ALJ erred by improperly discounting Plaintiff's testimony of subjective complaints of pain. The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the ALJ did not find Plaintiff's statements concerning the intensity, duration and limiting effects of those symptoms entirely credible. (R. 24.)

---

[38] 20 C.F.R. § 404.1527(d)(4).

The law on this issue is straightforward. If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[39] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[40] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[41] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[42] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[43] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[44]

---

[39] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[40] Foote, 67 F.3d at 1562-1563.

[41] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[42] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[43] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[44] Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

In the instant case, it appears as though the ALJ applied the Eleventh Circuit's pain standard "threshold"[45] assessment to Plaintiff's subjective complaints by noting the Plaintiff's status post thumb fracture, status post left foot fracture, chronic pain in left thumb and left foot and degenerative disc disease of the cervical spine. While the ALJ did not cite the exact language of the standard, he did state that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. 404.1529 and SSR's 96-4p and 96-7p." (R. 20.) This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard. Moreover, the ALJ cited 20 C.F.R. § 404.1529, which contains the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[46]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing the underlying medical conditions of status post left thumb fracture, status post left foot fracture, chronic pain in the left thumb and left foot, and degenerative disc disease of the cervical spine that could reasonably be expected to produce the alleged symptoms but that the Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 20.)

The ALJ discussed a number of reasons for rejecting Plaintiff's allegations of pain, each of which is supported by competent substantial evidence. First, the ALJ

---

[45] Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

[46] Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).

pointed to several inconsistencies that detract from Plaintiff's credibility.  As the ALJ noted, although Plaintiff testified the maximum he could lift was a gallon of milk and he was unable to cook for himself because he could not lift a skillet  (R.  263-265, 272), these limitations are inconsistent with the fact that the Plaintiff is right handed (R. 263) and has no difficulties with the right upper extremity. (R. 179, 242, 269.)

The ALJ also noted that upon discharge from physical therapy, Plaintiff had a right grip strength of 89 pounds and a left grip strength of 55 pounds (R. 20, 115), medical evidence that is at odds with Plaintiff's claims that he cannot lift a skillet and can only lift a gallon of milk.  Additionally, as the ALJ noted Plaintiff's physical therapist stated that Plaintiff had met his physical therapy goals and his prognosis was good. (R. 20, 115.)  Furthermore, as the ALJ discussed, according to Dr. Demmi, Plaintiff's right grip strength was 5/5 and his fine manipulation with the right hand was normal  (R. 180), both of which are supportive of the fact that the limitations were not as disabling as Plaintiff contended.

The ALJ also discounted the limiting effects of Plaintiff's allegations of pain because Plaintiff's complaints of disabling pain were inconsistent with the medical evidence of record and were controlled to some degree by medication. For example, the ALJ noted that although Plaintiff alleged shoulder and chest pain, on physical examination, no impingement was noted in the shoulder, the chest pain was determined to be noncardiac in nature and he did not have chest pain with respiration.  (R. 178, 180.)  Furthermore, both an x-ray and cat scan of the chest were normal.  (R. 99, 161.)  On physical examination Plaintiff's strength was normal in the shoulders, elbows, forearm, wrist, hips, knees, ankle and toes, except for his left hand.  (R. 178-179.)

33

Plaintiff's reflexes were symmetrical. (R. 179.) Lastly, the ALJ noted that Plaintiff's medications were helpful as evidenced by the fact that Plaintiff reported on at least six occasions that his medications were helpful in controlling his pain. (R. 222, 230, 232, 234, 235, 240.)

In sum, while Plaintiff does have functional limitations, which were properly considered and factored into Plaintiff's RFC, the ALJ articulated specific and adequate reasons that are supported by substantial evidence of record for rejecting Plaintiff's allegations of pain. It is not the role of this Court to re-weigh the evidence or substitute its discretion for that of the ALJ.[47] Accordingly, the ALJ did not err in his pain analysis.

### D.  There Was No Error in the RFC

Plaintiff contends that the ALJ ignored the mandatory requirements of SSR 96-8p when determining Plaintiff's RFC. This argument essentially repeats the same claims of error previously raised by the Plaintiff. For example, Plaintiff argues that the RFC determination was deficient in that the ALJ did not consider Plaintiff's pain disorder and limitations determined by Dr. Grudem, Dr. Honickman and Dr. Demmi. As the Court has discussed previously, the ALJ properly discounted the opinions of Dr. Grudem and Dr. Honickman and gave appropriate weight to Dr. Demmi's opinion regarding fine manipulation when the VE identified jobs that could accommodate an inability to use the hands for fine manipulation. (R. 20-21, 280-84.) Accordingly, there was no error by the ALJ in evaluating the Plaintiff's RFC.

---

[47] Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).

### E. The ALJ Did Not Err In Determining Plaintiff Had Transferable Skills

Lastly, Plaintiff argues that the ALJ erred in finding that Plaintiff had transferable skills to perform the jobs of dispatcher and information clerk.

Plaintiff was 58 years old on the alleged onset date and would be considered a person of advanced age.[48]  If a person is of advanced age and is limited to sedentary or light work, the Commissioner cannot find that an adjustment to other work can be made unless that person has skills that can transfer to other skilled or semiskilled work.[49]  If the individual has transferable skills, the skilled or semiskilled sedentary work must be so similar to the individual's previous work that very little, if any, vocational adjustment would have to be made in terms of tools, work processes, work settings, or the industry.[50]

During questioning by the ALJ, the VE testified that Plaintiff had acquired the following work skills in his past work experience as a tractor-trailer driver: the ability to drive long distances to deliver products, the ability to maintain driver logs and the ability to apply knowledge of commercial driving regulations. (R. 277.)  Based upon this testimony, the ALJ properly determined that Plaintiff had acquired work skills from his past relevant work.

As required, the ALJ then questioned the VE with regard to whether Plaintiff had transferable skills. (R. 277.) The VE testified that the skills involved in maintaining logs and compiling data would transfer to communication jobs at the sedentary level.  (R.

---

[48]  20 C.F.R. § 404.1563(d)-(e), (R. 42.)

[49]  20 C.F.R. § 404.1568(d)(4).

[50]  *See* id.

277.)  As the VE explained, the sedentary position of dispatcher of public works departments, required the skill of compiling data and the job of information clerk, required the skill of compiling logs and thus the transferable skills were  (R. 278-280.)

The ALJ then questioned the VE regarding the degree of vocational adjustment that would have to be made, in terms of tools, work processes, and work settings for the industry, from his past relevant work to the job of dispatcher, lot attendant, and information clerk. (R. 280-281.)  The VE testified that the work setting of a dispatcher or an information clerk would be different in that Plaintiff would be in an office as opposed to being in a tractor-trailer on the roadway. (R. 281.)  However, the VE expressly pointed out that this "would not be a major change" because as a tractor trailer driver Plaintiff would have had experience checking in with the main office and there are positions available for dispatchers for commercial freight delivery companies. (R. 280.)  The VE opined that the job tools and work processes of message taking and keeping logs as a dispatcher would not be a "significant change" from keeping a log as a tractor trailer driver.  The VE also concluded that the job tools and processes of information clerk would not differ that much from his past relevant work in that both jobs also require the worker to keep logs or checklists. (R. 281.)

Accordingly, the ALJ did not err but rather properly found, based upon the testimony of the VE, that Plaintiff has transferable skills to sedentary occupations, which would require little, if any, vocational adjustment.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be

**AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 26, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel